**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 0:19-cv-60785-SMITH/VALLE

AARON DONDE, individually and on behalf
of all others similarly situated,                                                  **CLASS ACTION**

      *Plaintiff*,

v.

FREEDOM FRANCHISE SYSTEMS, LLC,
a Florida Company, and FREEDOM
ADVENTURES, LLC, a Florida company

      *Defendants*.

_____/

**PLAINTIFF'S AND CLASS COUNSEL'S MOTION FOR FINAL APPROVAL OF**
**CLASS ACTION SETTLEMENT, APPLICATION FOR SERVICE AWARD,**
**AND APPLICATION FOR ATTORNEYS' FEES AND EXPENSES,**
**AND INCORPORATED MEMORANDUM OF LAW**

1

Plaintiff Aaron Donde sued Defendants Freedom Franchise Systems, LLC and Freedom Adventures, LLC (collectively referred to as "Defendants"), for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") claiming that he and other similarly situated persons received unauthorized text messages. The parties negotiated a settlement on behalf of Plaintiff and a class of approximately 90,330 other consumers who received text messages from or on behalf of Defendants. On June 25, 2020, the Court granted Preliminary Approval to the Settlement, directed that notice be provided to the Settlement Class, and established a deadline for the filing of a motion for Final Approval. Plaintiff and Class Counsel now seek Final Approval of the Settlement, along with approval of a Service Award for the Class Representative and reimbursement of attorneys' fees and expenses for Class Counsel.[1]

## I.      INTRODUCTION

The Settlement Agreement makes $948,475.50 available to the settlement class, which will also be used to pay the costs of settlement administration and attorneys' fees.  If finally approved, the Settlement will bring an end to what has otherwise been, and likely would continue to be, contentious litigation centered on unsettled legal questions. Plaintiff and Class Counsel now request that the Court: (1) grant Final Approval to the Settlement; (2) certify for settlement purposes the Settlement Class, pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure; (3) appoint Plaintiff as Class Representative; (4) appoint Avi R. Kaufman, Kaufman P.A., as Class Counsel; (5) approve the Plaintiff's requested Service Award; (6) award Class Counsel attorneys' fees; and (7) enter Final Judgment dismissing the Action with prejudice.

## II.     MOTION FOR FINAL APPROVAL

### A.      Procedural History

The Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and its implementing regulations were enacted by Congress and the Federal Communications Commission to "offer consumers greater protection from intrusive telemarketing calls…."[2] To promote and market FBC branded boat clubs, Defendants initiated a text message marketing campaign whereby autodialed text messages were sent to Plaintiff and approximately 90,330 other individuals. Avi R. Kaufman

---

[1] The Agreement and Amendment No. 1 thereto are attached as Composite Exhibit A. All capitalized terms used herein have the same definitions as those defined in the Agreement.

[2] Federal Communications Commission, Small Entity Compliance Guide for the TCPA (dated May 13, 2013), https://apps.fcc.gov/edocs_public/attachmatch/DA-13-1086A1.pdf.

Declaration ¶ 2, attached hereto as Exhibit B. Plaintiff alleged that this marketing campaign violated the TCPA because the messages were sent to consumers without express written consent.

On March 26, 2019, Plaintiff initiated this litigation in the United States District Court for the Southern District of Florida, alleging violations of the TCPA, and seeking, *inter alia,* monetary damages. [D.E. 1]. Plaintiff filed the Amended Complaint on April 29, 2019. [D.E. 8]. The parties engaged in extensive discovery, including third party discovery prior to reaching settlement. Kaufman Decl. ¶¶ 3, 35. Both Defendants responded to interrogatories (and, after a meet and confer, Freedom Adventures amended its interrogatory responses), and the Defendants, Trumpia, and SalesOptima (the company that supplied the shared CRM to the Freedom Boat Club entities, whom Plaintiff also subpoenaed) all produced a multitude of documents relating to how the Freedom Boat Club entities obtained class member cell phone numbers, the relationship between the various Freedom Boat Club entities, and the performance of the dialing platform used to send the text messages. *Id*. ¶ 3. This discovery went to the key merits issues, including whether class members consented to receive text messages or had an established business relationship with the Freedom Boat Club entities, whether Freedom Franchise Systems could be held vicariously liable for other Freedom Boat Club entities' text messages, and whether the text messages were sent using a dialing platform that constitutes an automatic telephone dialing system under the TCPA. *Id*.

With the benefit of fulsome discovery, the Parties engaged in intensive arm's-length negotiations over multiple weeks to resolve the Case with a view toward achieving substantial benefits for the Settlement Class as a whole, while avoiding the cost, delay, and uncertainty of further litigation, trial, and appellate practice. *Id*. ¶¶ 3-5. And on October 10, 2019, the Parties reached a settlement.

### B.    Summary of the Settlement Terms

The Settlement terms are detailed in the Agreement attached. The following is a summary of its material terms.

### 1.    The Settlement Class

The proposed Settlement establishes a Settlement Class of all members of the classes of persons in this Action as follows:

> All individuals within the United States (i) who received a text message (ii) on his or her cellular telephone number (iii) from short code 77453 or otherwise sent from or on behalf of the Released Parties (iv) from March 26, 2015 through the date of

preliminary approval.

Agreement Section I(II). Excluded from the Settlement Class are: (1) the district judge and magistrate judge presiding over this case, the judges of the U.S. Court of Appeals for the Eleventh Circuit, their spouses, and persons within the third degree of relationship to either of them; (2) individuals who are or were during the Class Period agents, directors, employees, officers, or servants of the Released Parties; (3) Plaintiff's counsel and their employees, and (4) all persons who file a timely and proper request to be excluded from the Settlement Class.

## 2. **Settlement Consideration**

Pursuant to the Settlement, Defendants have agreed to make up to $948,475.50 available for the benefit of Settlement Class Members ("Settlement Fund"), which constitutes $10.50 per Settlement Class Member, less Notice and Administration Costs, Service Award, and Attorney's Fees and Expenses. Although the exact amount of each claiming Settlement Class Member's distribution has not been determined, it is estimated to be approximately $7.25. Kaufman Decl. ¶7.

## 3. **The Notice Program**

The Notice Program consists of three different components: (1) E-mail Notice; (2) Mailed Notice and (2) Long-Form Notice. Agreement at III.  The parties have also sought leave to add an e-mail re-notice component to the notice program and add a publication component to the notice program to bolster the claims. *See* D.E. 43, which is pending before the Court as of the filing of this Motion.

The Notice Program was designed to provide the best notice practicable and was tailored to take advantage of the information Defendants had available about Settlement Class members. Kaufman Decl. ¶ 14.  The Notice Program was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the Action, the terms of the Settlement, Class Counsel's Attorneys' Fee application and request for Service Award for Plaintiff, and their rights to opt-out of the Settlement Class or object to the Settlement. *Id*. The Notices and Notice Program constitute sufficient notice to all persons entitled to notice, and satisfies all applicable requirements of law including, but not limited to, Federal Rule of Civil Procedure 23 and the constitutional requirement of due process. *Id*.

## 4. **Claims Process**

The Claims Process here is straightforward, easy to understand for Settlement Class Members, and designed so that they can easily claim their portion of the Settlement Fund. Kaufman

Decl. ¶ 15. Settlement Class members made or will make a claim by submitting a valid Claim Form to the Administrator.  A copy of the Claim Form is attached to Amendment No. 1 to Settlement Agreement as Exhibit 1.  Claim Forms may be sent in by hard copy or submitted electronically on the Settlement Website. The Claim Form requires basic information from Settlement Class members.

### 5.   Claims Payments to Settlement Class Members

Each Settlement Class Member who timely files with the Settlement Administrator a valid Claim Form shall receive a cash distribution payable by check of $10.50 less Notice and Administration Costs, Service Award, and Attorney's Fees and Expenses. Although the exact amount of each claiming Settlement Class Member's distribution has not been determined, it is estimated to be approximately $7.25. Kaufman Decl. ¶ 7. Settlement Class Members will be sent their Claim Settlement Checks to the address they submitted on their Claim Form within 60 days following the Effective Date. Agreement at II.B.1.

### 6.   Release of Claims

In exchange for the Settlement consideration, Plaintiff and all Settlement Class Members, agree to the release as defined in Section V of the Agreement.  The Release is narrowly tailored to the claims asserted in this action. Kaufman Decl. ¶ 8.

### 7.   Class Counsel Fees and Expenses and Plaintiff's Service Award

Defendants have agreed not to oppose Class Counsel's request for attorneys' fees and expenses of up to twenty five percent of the Settlement Fund or $237,118.87. Defendants have also agreed not to oppose an application for a Service Award for the Plaintiff up to $5,000.00. Agreement at II.D.  The Court should consider whether to grant or deny these awards separate and apart from its consideration of the fairness and reasonableness of the Settlement.

### C.   Argument

Court approval is required for settlement of a class action. Fed. R. Civ. P. 23(e). The federal courts have long recognized a strong policy and presumption in favor of class settlements. The Rule 23(e) analysis should be "informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. Unit B 1982). In evaluating a proposed class settlement, the Court "will not substitute its business judgment for that of the parties; 'the only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.'" *Rankin v. Rots*, No. 02-CV-

71045, 2006 U.S. Dist. LEXIS 45706, at *9 (E.D. Mich. June 28, 2006). Class settlements minimize the litigation expenses of the parties and reduce the strain that litigation imposes upon already scarce judicial resources. Therefore, "federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). The Settlement here is more than sufficient under Rule 23(e) and Final Approval is clearly warranted.

      **1.     Notice was the Best Practicable and was Reasonably Calculated to Inform the Settlement Class of its Rights**

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Lit*. § 21.312 (internal quotation marks omitted). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950). To satisfy this standard, "[n]ot only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt-out of the action." *Twigg v. Sears, Roebuck & Co*., 153 F.3d 1222, 1227 (11th Cir. 1998) (internal quotation marks omitted); *see also* Manual for Compl. Lit. § 21.312 (listing relevant information).

The Notice program satisfies these criteria. As recited in the Settlement and above, the Notice Program informed Settlement Class members of the substantive terms of the Settlement. It advised Settlement Class members of their options for remaining part of the Settlement Class, for objecting to the Settlement, Class Counsel's Attorneys' fee application and/or request for Service Award, or for opting-out of the Settlement, and how to obtain additional information about the Settlement. The Notice Program was designed to directly reach a high percentage of Settlement Class members. Specifically, all of the text message recipients are cell phone users who had previously and voluntarily provided their cell phone numbers and other contact information to a Freedom Boat Club entity, and therefore the Freedom Boat Club entities have been able to produce consumer identifying information (including names, cell phone numbers, addresses, and email addresses) in their shared CRM system for each of the text message recipients based on the cell phone numbers in the Trumpia text logs.  Kaufman Decl. at ¶ 14. And, as a result, Notice reached over 95% of Settlement Class members. See Settlement Administrator Declaration ¶¶ 7-17, attached hereto as Exhibit C.  This exceeds the requirements of

Constitutional Due Process. Therefore, the Court should approve the Notice Program and the form and content of the Notices.

Notwithstanding the successful notice program, to date, fewer than 1% of settlement class members have filed claims. As a result, the parties filed a joint motion to provide additional notice and extend the claims deadline. (D.E. 43). Neither the current low claims rate or an extended claims deadline weigh against final approval of the Settlement. "The question for the Court at the Final Fairness Hearing stage is whether the settlement provided to the class is 'fair, reasonable, and adequate,' not whether the class decides to actually take advantage of the opportunity provided." *Braynen v. Nationstar Mortg., LLC*, 2015 U.S. Dist. LEXIS 151744, at \*48-50 (S.D. Fla. Nov. 9, 2015) ("Courts in this Circuit have approved claims-made class settlements where the claims rate was low, including approving single-digit claims rates. . . . In addition, courts often grant final approval of class action settlements before the final claims deadline. . . . The question for the Court at the Final Fairness Hearing stage is whether the settlement provided to the class is 'fair, reasonable, and adequate,' not whether the class decides to actually take advantage of the opportunity provided.  Further, setting the Claim Deadline after the Final Fairness Hearing has the salutary effect of maximizing the claim period's duration.") (internal citations omitted); *Poertner v. Gillette Co.*, 618 F. App'x 624, 626 (11th Cir. 2015) (approving settlement class when less than 1% of class members filed claims).

## 2.    The Settlement Should Be Approved as Fair, Adequate and Reasonable.

In deciding whether to approve the Settlement, the Court will analyze whether it is "fair, adequate, reasonable, and not the product of collusion." *Leverso v. Southtrust Bank*, 18 F.3d 1527, 1530 (11th Cir. 1994); *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). A settlement is fair, reasonable, and adequate when "the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Lorazepam & Clorazepate Antitrust Litig.*, MDL No. 1290, 2003 WL 22037741, at \*2 (D.D.C. June 16, 2003) (quoting *Manual for Complex Litigation (Third)* § 30.42 (1995)). Importantly, the Court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000) (citations omitted).

The Eleventh Circuit has identified six factors to be considered in analyzing the fairness, reasonableness, and adequacy of a class settlement under Rule 23(e):

(1) the existence of fraud or collusion behind the settlement;
(2) the complexity, expense, and likely duration of the litigation;
(3) the stage of the proceedings and the amount of discovery completed;
(4) the probability of the plaintiffs' success on the merits;
(5) the range of possible recovery; and
(6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement.

*Leverso*, 18 F.3d at 1530 n.6; *see also Bennett*, 737 F.2d at 986. The analysis of these factors set forth below shows this Settlement to be eminently fair, adequate and reasonable.

### i. There Was No Fraud or Collusion

The contested nature of the proceedings in this Action demonstrates the absence of fraud or collusion behind the Settlement. *See, e.g.*, *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 n.3 (S.D. Fla. 2001).

Plaintiff and the Settlement Class were represented by experienced counsel throughout the negotiations. With the benefit of extensive discovery, the Parties engaged in intensive arm's-length negotiations over multiple weeks to resolve the Case with a view toward achieving substantial benefits for the Settlement Class as a whole, while avoiding the cost, delay, and uncertainty of further litigation, trial, and appellate practice. *See* Kaufman Decl. ¶ 5. And on October 10, 2019, the Parties reached settlement.

### ii. The Settlement Will Avert Years of Complex Expensive Litigation

The claims and defenses are complex; recovery by any means other than settlement would require additional years of litigation. *See United States v. Glens Falls Newspapers, Inc.*, 160 F. 3d 853, 856 (2d Cir. 1998) (noting that "a principal function of a trial judge is to foster an atmosphere of open discussion among the parties' attorneys and representatives so that litigation may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial.").

In contrast, the Settlement provides immediate and substantial monetary benefits to the Settlement Class. As stated in *In re Shell Oil Refinery*, 155 F.R.D. 552 (E.D. La. 1993):

> The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, "[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush."

*Id.* at 560 (alterations in original). Particularly because the "demand for time on the existing judicial system must be evaluated in determining the reasonableness of the settlement," *Ressler v. Jacobson*,

822 F. Supp. 1551, 1554 (M.D. Fla. 1992) (citation omitted), there can be no doubt about the adequacy of the present Settlement.

### iii.    The Factual Record Is Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgement

Courts also consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating." *In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler*, 822 F. Supp. at 1555.

Class Counsel negotiated the Settlement with the benefit of extensive and thorough formal discovery, including third party discovery. Kaufman Decl. ¶¶ 3-5, 34-35. This discovery went to the key merits issues, including whether class members consented to receive text messages or had an established business relationship with the Freedom Boat Club entities, whether Freedom Franchise Systems could be held vicariously liable for other Freedom Boat Club entities' text messages, and whether the text messages were sent using a dialing platform that constitutes an automatic telephone dialing system under the TCPA. Plaintiff also spent considerable time researching and navigating Defendants' numerous defenses. As such, Class Counsel's analysis and understanding of the legal obstacles positioned them to evaluate the strengths and weaknesses of Plaintiff's claims and Defendants' defenses, as well as the range and amount of damages that were potentially recoverable if the Action proceeded to judgment on a class-wide basis. *Id.* ¶ 4.

### iv.    Plaintiff and the Class Still Faced Significant Obstacles to Prevailing

The "likelihood and extent of any recovery from the defendants absent . . . settlement" is another important factor in assessing the reasonableness of a settlement. *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 314 (N.D. Ga. 1993). Class Counsel believes that Plaintiff had a strong case against Defendants. Kaufman Decl. ¶ 4. Even so, Class Counsel are mindful that Defendants advanced significant defenses, including defenses to class certification, that would have been required to overcome in the absence of the Settlement. *Id.* Moreover, the Settlement is fair, reasonable, and adequate given the risk that, even if a class was certified, Plaintiff and the class would not prevail on the merits of their claims, warranting preliminary and ultimately final approval.  Specifically, based on Plaintiff's and other class members' voluntary provision of their cell phone numbers to the Freedom Boat Club

entities, the trier of fact could have concluded that they consented to receive text messages from the Freedom Boat Club entities and/or established business relationships with the Freedom Boat Club entities. *Id*. ¶ 6. Based on the operative agreements between Freedom Franchise Systems and other Freedom Boat Club entities, and the general nature of franchisor/franchisee relationships, the trier of fact also could have determined that Freedom Franchise Systems was not vicariously liable for the sending of the text messages. *Id*.

And, perhaps the greatest risk to Plaintiff and the class was the ever changing TCPA landscape. In fact, since the Parties settled, the United States Supreme Court has taken up two cases with the potential to eliminate some or all of the TCPA's provisions, including the autodialer and Do Not Call provisions at issue in this case. Kaufman Decl. ¶ 6; *see Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335 (Jul. 6, 2020); *Facebook, Inc. v. Duguid*, No. 19-511 (granting certiorari on Jul. 9, 2020). Moreover, based on the Eleventh Circuit's review and ultimate interpretation of what constitutes an automatic telephone dialing system under the TCPA during the pendency of this action, the Court or trier of fact may have ultimately concluded that the Trumpia platform was not an automatic telephone dialing system. Kaufman Decl. ¶ 6.

Apart from the risks, continued litigation would have involved substantial delay and expense, which further counsels in favor of Final Approval, especially in light of Defendants' financial condition and ability to pay a judgment if ultimately obtained. *Id.* ¶ 7. The uncertainties and delays from this process would have been significant. *Id*. ¶¶ 4-7.

Given the myriad risks attending these claims, as well as the certainty of substantial delay and expense from ongoing litigation, the Settlement providing for an immediate payment of approximately $7.25 per potential TCPA violation and per Settlement Class Member represents a fair compromise. *See, e.g*., *Haynes v. Shoney's*, No. 89-30093-RV, 1993 U.S. Dist. LEXIS 749, at *16-17 (N.D. Fla. Jan. 25, 1993) ("The risks for all parties should this case go to trial would be substantial. …. It is possible that trial on the merits would result in … no relief for the class members. … Based on … the factual and legal obstacles facing both sides should this matter continue to trial, I am convinced that the settlement … is a fair and reasonable compromise.").

### v.     The Benefits Provided by the Settlement Are Fair, Adequate and Reasonable Compared to the Range of Possible Recovery

In determining whether a settlement is fair given the potential range of recovery, the Court should be guided by "the fact that a proposed settlement amounts to only a fraction of the potential

recovery does not mean the settlement is unfair or inadequate." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990). Indeed, "[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Id.*

As discussed above, Class Counsel was well-positioned to evaluate the strengths and weaknesses of Plaintiff's claims, particularly in light of the progressively more unfavorable legal climate surrounding these claims as the case progressed, as well as the appropriate basis upon which to settle them. Kaufman Decl. ¶¶ 3-7. Pursuant to the TCPA, each injured Settlement Class member could have received $500.00 for each violative message received upon a successful verdict at trial, but such a result was very uncertain and may have required years of litigation, and, even then, may have resulted in no recovery at all given the changes in governing TCPA law and nature and size of Defendants' business. Plaintiff and the class faced significant risk in going forward, and the amount each class member will receive, $10.50 less each settlement class member's share of any notice and administration costs (estimated to total $49,491, which is equal to less than $.55 per class member, *see* Administrator Decl. at n. 1), attorneys' fees and costs (in the aggregate not to exceed 25% of the settlement fund), and a service award for Plaintiff ($5,000) – is fair and adequate. *See, e.g., Goldschmidt v. Rack Room Shoes*, No. 18-21220-CIV-WILLIAMS/TORRES, *slip op. (D.E. 86)* (S.D. Fla. Jan. 16, 2020) (approving settlement of TCPA claims providing for $5 per class member, less attorneys' fees, costs, administration costs, and service award, and a $10 voucher); *Halperin v. You Fit Health Clubs, LLC*, No. 18-61722-CIV-DIMITROULEAS/SNOW, *slip op. (D.E. 44)* (S.D. Fla. Nov. 1, 2019) (approving settlement of TCPA claims providing for $9 per class member, less attorneys' fees, costs, administration costs, and service award).

### vi.    The Opinions of Class Counsel, the Plaintiff, and Absent Settlement Class Members Favor Approval

Class Counsel strongly endorses the Settlement given the significant risks in proceeding with litigating this case. *Id.* at ¶ 16. The Court should give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren v. Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988); *see also Domestic Air*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. [T]he trial judge, absent fraud, collusion, or the like,

should be hesitant to substitute its own judgment for that of counsel.") (citations omitted).

To date, there have been no objections or opt outs to the Settlement. Administrator Decl. ¶ 19. Even if there were some objections (and there are none at this time), it is settled that "[a] small number of objectors from a plaintiff class of many thousands is strong evidence of a settlement's fairness and reasonableness." *Association for Disabled Americans v. Amoco Oil Co.*, 211 F.R.D. 457, 467 (S.D. Fla. 2002).

### 3.    The Court Should Certify the Settlement Class

Plaintiff and Class Counsel respectfully request that the Court certify the Settlement Class. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Under Rule 23(b)(3), certification is appropriate if the questions of law or fact common to the class members predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and adjudication of the controversy. For the purpose of considering a settlement, all of the factors are satisfied.

The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of approximately 90,331 individuals, and joinder of all such persons is impracticable. *See* Fed. R. Civ. P. 23(a)(1); Kaufman Decl. ¶ 9; *Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area").

The class is ascertainable based on the information included in the Trumpia text message logs and records otherwise maintained by the Freedom Boat Club entities. Kaufman Decl. ¶ 10; *see Godson v. Eltman, Eltman, & Cooper, P.C.*, 328 F.R.D. 35, 47 (W.D.N.Y. 2018) ("Here, Defendants likely maintain records identifying those individuals from whom they sought to collect on any purported debt and, likewise, to whom they sent the allegedly unlawful form collection letter. Since Plaintiff may easily identify the members of the Settlement Class by reviewing Defendants' own records pertaining to the timeframe circumscribed by the class definition, the

11

implied requirement of ascertainability is satisfied.").

Specifically, all of the text message recipients are cell phone users who had previously and voluntarily provided their cell phone numbers and other contact information to a Freedom Boat Club entity, and therefore the Freedom Boat Club entities have been able to produce consumer identifying information (including names, cell phone numbers, addresses, and email addresses) in their shared CRM system for each of the text message recipients based on the cell phone numbers in the Trumpia text logs.  Kaufman Decl. ¶ 10.  The Court can therefore objectively determine class membership in an administratively feasible manner (and direct notice can be provided to settlement class members) based on Trumpia's and the Freedom Boat Club entities' records.  *Id*.

Moreover, the Trumpia text message logs reflect that every text message recipient received a text message that included in its text the term (1) "Freedom Boat Club," (2) the abbreviation "FBC," and/or (3) a link to a Freedom Boat Club affiliated website. *Id*. ¶ 11. Settlement class members are therefore also able to objectively determine whether they received a text message from or on behalf of a Freedom Boat Club entity based on their own records.  *Id*.

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011) (citation omitted). Here, the commonality requirement is readily satisfied. There are multiple questions of law and fact – centering on Defendants' marketing program – that are common to the Settlement Class, that are alleged to have injured all Settlement Class members in the same way, and that would generate common answers.

With regard to predominance, the primary issues to be determined in this matter are (1) whether class members consented or had an established business relationship with any of the Freedom Boat Club entities, (2) whether Freedom Franchise Systems could be held vicariously liable for other Freedom Boat Club entities' text messages, and (3) whether the dialing platform used to send the text messages was an automatic telephone dialing system as defined under the TCPA. Kaufman Decl. ¶ 12.

For similar reasons, Plaintiff's claims are reasonably coextensive with those of the absent class members, such that the Rule 23(a)(3) typicality requirement is satisfied. *See Kornberg v.*

*Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"). Plaintiff is typical of absent Settlement Class members because he received Defendants' text messages and suffered the same injuries as other Settlement Class members, entitling them to the same relief.

Plaintiff and Class Counsel also satisfy the adequacy of representation requirement. Adequacy under Rule 23(a)(4) relates to (1) whether the proposed class representative has interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation. *Fabricant v. Sears Roebuck & Co.*, 202 F.R.D. 310, 314 (S.D. Fla. 2001). The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (internal quotation marks omitted). Plaintiff's interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiff and the absent Settlement Class members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class members have no diverging interests. Declaration of Aaron Donde, attached as Exhibit D. Further, Plaintiff and the Settlement Class are represented by qualified and competent Class Counsel who has extensive experience and expertise prosecuting complex class actions, including TCPA class actions. Kaufman Decl. ¶¶ 19-25.

Rule 23(b)(3) requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted). Plaintiff readily satisfies the Rule 23(b)(3) predominance requirement because liability questions common to all Settlement Class members substantially outweigh any possible issues that are individual to each Settlement Class member. The common questions in this case would be determined on common evidence and yield common answers. Kaufman Decl. ¶ 12.

First, because the Freedom Boat Club entities collected class members' cell phone numbers in one of two substantially similar ways, whether class members' voluntary provision of their cell phone numbers constituted consent and/or established a business relationship could be resolved

based on the same evidence used to determine whether Plaintiff, who, according to Defendants' records, voluntarily provided his cell phone number consented to received text messages from Defendants or had an established business relationship with Defendants.  *Id*.

Second, because the evidence obtained in discovery reflects that (1) the relationship between Freedom Franchise Systems and the other Freedom Boat Club entities was based on a substantially similar contract, and (2) Freedom Franchise Systems supplied the other Freedom Boat Club entities with the same dialing platform to send text messages, whether Freedom Franchise Systems is vicariously liable as to text messages sent by any other Freedom Boat Club entity can be determined based on the same evidence relevant to Freedom Franchises Systems' vicarious liability as to text messages sent by ever other Freedom Boat Club entity, including Freedom Adventures, the Freedom Boat Club entity that text messaged Plaintiff.  *Id*.

Third, because all of the Freedom Boat Club entities used the Trumpia dialing platform to send text messages to class members, including Plaintiff, determining whether the texts to Plaintiff were sent using an automatic telephone dialing system will resolve this issue as to all class members.  The proposed class therefore satisfies the predominance requirement.  *Id*.

Relatedly, the proposed class satisfies the superiority requirement because "common issues of law and fact predominate over any individualized issues" and "the large number of claims, along with the relatively small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims, all indicate that a class action would be the superior method of adjudicating" Plaintiff's "claims under the TCPA."  *See Kron v. Grand Bahama Cruise Line, LLC*, 328 F.R.D. 694, 702 (S.D. Fla. 2018); Kaufman Decl. ¶ 13. For these reasons, the Court should certify the Settlement Class.

Based on the foregoing, the Settlement is fair, adequate, and reasonable.

III.    **APPLICATION FOR SERVICE AWARD**

Pursuant to the Settlement, Class Counsel respectfully requests, and Defendant does not oppose, a Service Award for the Class Representative in the amount of $5,000. Service awards "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006); *see Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1147-48 (11th Cir. 1983) (holding that a settlement can provide for "preferential treatment for the named plaintiffs in a class

action" if supported by the "totality of the circumstances," including the unique strength of the named plaintiffs' claims). "[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action." *David v. American Suzuki Motor Corp*., 2010 WL 1628362, at *6 (S.D. Fla. Apr. 15, 2010).

The relevant factors include: (1) the actions the class representatives took to protect the interests of the class; (2) the degree to which the class benefited from those actions; and (3) the amount of time and effort the class representatives expended in pursuing the litigation. *See, e.g*., *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). These factors, as applied to this Action, demonstrate the reasonableness of the requested Service Award to Plaintiff. Plaintiff provided assistance that enabled Class Counsel to successfully prosecute the Action including submitting to interviews with Class Counsel, reviewing all material filings, including approving the Agreement, and locating and forwarding responsive documents and information to Defendant's formal discovery requests, to determine that Plaintiff never consented and had no ongoing relationship with Defendants that would provide a defense to his TCPA claims. Donde Decl. ¶ 3; Kaufman Decl. ¶ 18. The Service Award of $5,000 is therefore reasonable. *See Holmes*, 706 F.2d at 1147-48.

## IV.    APPLICATION FOR ATTORNEYS' FEES AND EXPENSES

Pursuant to the Agreement, and as indicated in the Notices, consistent with recognized class action practice and procedure, Class Counsel respectfully requests an award of attorneys' fees of $237,118.87 or 25% of the Settlement Fund.  Class Counsel and Defendants negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material Settlement terms. Kaufman Decl. ¶ 5. The requested fee is well within the range of reason under the factors listed in *Camden I Condo. Ass'n. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991). For the reasons detailed herein, Class Counsel submits that the requested fee is appropriate, fair, and reasonable and respectfully request that it be approved by the Court.

### A.    <u>The Law Awards Class Counsel Fees from the Common Fund Created Through Their Efforts</u>

It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to attorneys' fees based upon the benefit obtained. *Camden I*, 946 F.2d at 771; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The common benefit doctrine is an exception to the general rule that each party must bear its own litigation costs. The doctrine serves the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of

equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *In re Gould Sec. Litig.*, 727 F. Supp. 1201, 1202 (N.D. Ill. 1989) (citation omitted). The common benefit doctrine stems from the premise that those who receive the benefit of a lawsuit without contributing to its costs are "unjustly enriched" at the expense of the successful litigant. *Van Gemert*, 444 U.S. at 478. As a result, the Supreme Court, the Eleventh Circuit, and courts in this District have all recognized that "[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole." *Sunbeam*, 176 F. Supp. 2d at 1333. Courts have also recognized that appropriate fee awards in cases such as this encourage redress for wrongs caused to entire classes of persons, and deter future misconduct of a similar nature.

In the Eleventh Circuit, class counsel are awarded a percentage of the funds obtained through a settlement. In *Camden I* – the controlling authority regarding attorneys' fees in common-fund class actions – the Eleventh Circuit held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774; *see also Hamilton v. SunTrust Mortg. Inc.*, No. 13-60749-CIV-COHN/SELTZER, 2014 U.S. Dist. LEXIS 154762, at *20 (S.D. Fla. Oct. 24, 2014) (attorneys representing a class action are entitled to an attorneys' fee based solely upon the total benefits provided by a class settlement); *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 695 (S.D. Fla. 2014) (attorneys' fees in a class action should be determined based upon the total fund created, not just the actual payout to the class).

The Court has discretion in determining the appropriate fee percentage. "There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 774).

The Eleventh Circuit has provided a set of factors the Court should use to determine a reasonable percentage to award as an attorney's fee to class counsel in class actions:

> (1) the time and labor required;
> (2) the novelty and difficulty of the relevant questions;
> (3) the skill required to properly carry out the legal services;
> (4) the preclusion of other employment by the attorney as a result of her acceptance of the case;
> (5) the customary fee;

(6) whether the fee is fixed or contingent;
(7) time limitations imposed by the clients or the circumstances;
(8) the results obtained, including the amount recovered for the Clients;
(9) the experience, reputation, and ability of the attorneys;
(10) the "undesirability" of the case;
(11) the nature and the length of the professional relationship with the clients; and
(12) fee awards in similar cases.

*Camden I*, 946 F.2d at 772 n.3 (citing factors originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

These 12 factors are guidelines and are not exclusive. "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 775). The Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the particular case." *Camden I*, 946 F.2d at 775. As applied, the *Camden I* factors support the requested fee.

### 1.        The Claims Against Defendants Required Substantial Time and Labor

Prosecuting Plaintiff and the class's claims demanded considerable time and labor, making this fee request reasonable. Kaufman Decl. ¶¶ 28-41. Class Counsel devoted substantial time to investigating the claims against Defendants. *Id.* ¶ 34. Class Counsel also expended resources researching and developing the legal claims at issue. *Id.* ¶¶ 6, 34-36. Time and resources were also dedicated to conducting formal discovery and pursuing third party discovery. *Id.* ¶ 35. Finally, Class Counsel devoted substantial time to reviewing numerous pages of documents and electronic data over the course of discovery. *Id.*

Settlement negotiations consumed further time and resources. *Id.* ¶ 37. Finally, significant time was devoted to negotiating and drafting of the Agreement and the preliminary approval process, and to all actions required thereafter pursuant to the preliminary approval order. *Id.* All of this work consumed a substantial amount of time.

All told, Class Counsel's work resulted in an excellent result—a Settlement Agreement making $948,475.50 available to the settlement class. Each of the above-described efforts was essential to achieving the Settlement before the Court. The time and resources devoted to this Action readily justify the requested fee. *Id.* ¶ 27.

### 2. The Issues Involved Were Novel and Difficult, and Required the Skill of Highly Talented Attorneys

"[P]rosecution and management of a complex national class action requires unique legal skills and abilities." *Edmonds v. U.S.*, 658 F. Supp. 1126, 1137 (D.S.C. 1987). The quality of Class Counsel's legal work is evidenced by the substantial benefit conferred to the Settlement Class in the face of significant litigation obstacles. Class Counsel's work required the acquisition and analysis of a significant amount of factual and legal information.

In any given case, the skill of legal counsel should be commensurate with the novelty and complexity of the issues, as well as the skill of the opposing counsel. Litigation of this Action required counsel trained in class action law and procedure as well as the specialized issues presented here. Class Counsel is particularly experienced in the litigation, certification, and settlement of nationwide class action cases, and his participation added value to the representation of this Settlement Class. Kaufman Decl. ¶¶ 21-26.

In evaluating the quality of representation by Class Counsel, the Court should also consider opposing counsel. *See Camden I*, 946 F.2d at 772 n.3; *Ressler*, 149 F.R.D. at 654. Throughout the litigation, Defendants were represented by extremely capable counsel. They were worthy, highly competent adversaries. Kaufman Decl. ¶ 20.

### 3. Class Counsel Achieved a Successful Result

Given the significant litigation risks the Class faced, the Settlement represents a successful result. Rather than facing years of costly and uncertain litigation, the Settlement makes available an immediate cash benefit to Settlement Class Members. *Id*. ¶¶ 6-7.

### 4. The Claims Presented Serious Risk

As discussed in detail above, the Settlement is fair and reasonable given the extensive litigation risks. Kaufman Decl. ¶¶ 3-7. Consideration of the "litigation risks" factor under *Camden I* "recognizes that counsel should be rewarded for taking on a case from which other law firms shrunk. Such aversion could be due to any number of things, including social opprobrium surrounding the parties, thorny factual circumstances, or the possible financial outcome of a case. All of this and more is enveloped by the term 'undesirable.'" *Sunbeam*, 176 F. Supp. 2d at 1336.

The Settlement Fund obtained through the Settlement is substantial, given the complexity of the litigation and the significant risks and barriers that loomed in the absence of Settlement. Any of these risks could easily have impeded, if not altogether derailed, Plaintiff's and the Settlement Class's successful prosecution of these claims.

The recovery achieved by this Settlement must be measured against the fact that any recovery by Plaintiff and Settlement Class Members through continued litigation could only have been achieved if: (i) Plaintiff was able to certify a class and establish liability and damages at trial; (ii) the final judgment was affirmed on appeal; and (iii) Defendants were then able to satisfy the final judgment. The Settlement is an extremely fair and reasonable recovery for the Settlement Class in light of Defendants' defenses, and the challenging and unpredictable path of litigation Plaintiff and the certified class would have faced absent the Settlement. Kaufman Decl. ¶¶ 6-7.

5.    **Class Counsel Assumed Considerable Risk to Pursue This Action on a Pure Contingency Basis**

In undertaking to prosecute this case on a contingent fee basis, Class Counsel assumed a significant risk of nonpayment or underpayment. That risk warrants an appropriate fee. Indeed, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." *Sunbeam*, 176 F. Supp. 2d at 1335 (quoting *Behrens*, 118 F.R.D. at 548); *see also Birch v. Office Depot Inc*., No. 06 CV 1690 DMS (WMC), 2007 U.S. Dist. LEXIS 102747, at *7 (S.D. Cal. Sep. 28, 2007) ("Class Counsel has proceeded on a contingency basis despite the uncertainty of any fee award. Class Counsel risked that it would not obtain any relief on behalf of Plaintiff or the Class, and so no recovery of fees. In addition, Class Counsel was precluded from pursuing other potential sources of revenue due to its prosecution of the claims in this action.").

Public policy concerns – in particular, ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims – support the requested fee. The progress of the Action to date shows the inherent risk faced by Class Counsel in accepting and prosecuting the Action on a contingency fee basis. Despite Class Counsel's effort in litigating this Action, Class Counsel remains completely uncompensated for the time invested in the Action, in addition to the expenses advanced. Kaufman Decl. ¶ 41. There can be no dispute that this case entailed substantial risk of nonpayment for Class Counsel.

6.    **The Requested Fee Comports with Fees Awarded in Similar Cases**

Counsel's requested fee of $237,118.87 or approximately 25% of the Settlement Fund is well within the range of fees typically awarded in similar cases. Numerous decisions within and outside of the Southern District of Florida and the Eleventh Circuit have found that a 33.33% fee is the benchmark fee percentage under the factors listed by the *Camden I. See Legg v. Laboratory Corp. of America*, 14-cv-61543-RLR, Dkt. 227, p.7 (S.D. Fla. Feb. 18, 2016) (FACTA case

awarding one-third of gross recovery for attorneys' fees, plus expenses); *Wolff v. Cash 4 Titles*, No. 03-22778- CIV, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third.") (citing Circuit case law and listing Southern and Middle District of Florida attorneys' fees awards).

Class Counsel's fee request falls well within the range of the private marketplace, where contingency fee arrangements often approach or equal forty percent of any recovery. *See Continental*, 962 F.2d at 572 ("The object in awarding a reasonable attorneys' fee . . . is to simulate the market."); *RJR Nabisco, Inc. Sec. Litig.*, Fed. Sec. L. Rep. (CCH) ¶ 94, 268 (S.D.N.Y. 1992) ("[W]hat should govern [fee] awards is . . . what the market pays in similar cases").

Finally, Class Counsel's fee request also falls within the range of awards in TCPA cases within this Circuit and elsewhere. *See Gottlieb v. Citgo Petroleum Corp.*, No. 9:16-cv-81911, 2017 U.S. Dist. LEXIS 197382, at *7 (S.D. Fla. Nov. 29, 2017) (granting fees and costs amounting to one-third of the $8,000,000 settlement fund); *ABC Bartending School of Miami, Inc., v. American Chemicals & Equipment, Inc.*, No. 15-CV-23142-KMV (S.D. Fla. April 11, 2017) (granting fees and costs amounting to one-third of the $1,550,000 settlement fund); *Guarisma v. ADCAHB Med. Coverages, Inc.*, Case No. 1:13-cv-21016 (S.D. Fla. June 24, 2015) (granting fees and costs amounting to one-third of the $4,500,000 settlement fund).

Consequently, the attorneys' fee requested here, which is less than the percentage awarded in the cases cited above, is appropriate and should be awarded. Kaufman Decl. ¶¶ 28-42.

## V.    CONCLUSION

Plaintiff and Class Counsel respectfully request that this Court: (1) grant Final Approval to the Settlement and enter the proposed order attached as Exhibit E; (2) certify for settlement purposes the Settlement Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3), and 23(e); (3) appoint Aaron Donde as Class Representative; (4) appoint as Class Counsel Avi R. Kaufman of Kaufman P.A.; (5) approve the requested Service Award in the amount of $5,000; (6) award Class Counsel attorneys' fees in the amount of $237,118.87 or 25% of the Settlement Fund; and (7) enter Final Judgment dismissing the Action with prejudice. Counsel for Defendants have no opposition to this motion.

Respectfully submitted,

Dated: September 18, 2020.          */s/ Avi R. Kaufman*
                                     Avi R. Kaufman (FL Bar no. 84382)
                                     kaufman@kaufmanpa.com

KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Counsel for Plaintiff and all others similarly situated*